**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARK BREWER, | No. 56541-2-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| COLLEEN HILL, | |
| Appellant. | |

CRUSER, J. — Colleen Hill resided in a house in which she rented a room and shared common spaces with other tenants, including Mark Brewer. Hill's tenancy predated Brewer's arrival as a tenant. According to Brewer, he subsequently came to an agreement with the owner of the property that he would collect rent from the tenants residing in the home and pay the full amount of rent to the owner. In August 2021, Brewer issued a 20-day notice to terminate Hill's tenancy. When Hill did not leave the property, Brewer initiated an unlawful detainer proceeding, asserting that he had authority to terminate Hill's tenancy under a recently enacted statute under the Residential Landlord-Tenant Act of 1973 (RLTA), ch. 59.18 RCW. The relevant statute, RCW 59.18.650(2)(i), allows owners or lessors sharing the residence with the tenant to issue a 20-day notice terminating the tenancy. After several show cause hearings, the trial court issued a writ of restitution restoring the property to Brewer and ordered that Hill's tenancy was terminated without setting the matter for trial.

No. 56541-2-II

Hill appeals, arguing that (1) the trial court erred by concluding that Brewer was a lessor under the statute and issuing a writ excluding her from the property, (2) alternatively, the trial court erred by failing to set the matter for trial when there was an issue of material fact as to whether Brewer was a lessor, and (3) the trial court erred when it considered a declaration submitted by Brewer in response to Hill's motion for reconsideration.

We hold that there is no evidence that Brewer is a lessor with the authority to terminate Hill's tenancy pursuant to RCW 59.18.650(2)(i). Accordingly, Brewer's unlawful detainer action should have been dismissed, and it was error for the trial court to issue a writ of restitution and find that Hill was in unlawful detainer and that her tenancy should be terminated. We reverse the trial court's December 10, 2021 orders on motion for reconsideration and on show cause and dismiss Brewer's unlawful detainer action.

FACTS

I. BACKGROUND

In 2018, Hill began renting a room in a house owned by Harvey Lindquist in Port Townsend. She entered into an oral month-to-month rental agreement in which she shared a kitchen, bathroom, and laundry facilities with three others who were living at the residence.[1] At some point after Hill's tenancy began, Brewer moved in after signing a written rental agreement with Lindquist. Lindquist lives outside of the country.

---

[1] It is not clear from the record who Hill made the rental agreement with.

2

No. 56541-2-II

## II. UNLAWFUL DETAINER PROCEEDINGS

### A. Commencement and Initial Pleadings

In October 2021, Brewer filed a complaint for unlawful detainer, alleging that Hill had not vacated the premises after being served with a 20-day notice to terminate tenancy in August. Brewer's complaint asserted that he was the property manager of the residence. The 20-day notice stated that Hill's tenancy would expire on the last day of September, and that the notice was given "pursuant to HB1236 Section 2(2)(i)."[2] Clerk's Papers (CP) at 4. Brewer also moved for an order to show cause.[3] In his attached declaration, he again claimed to be the property manager for the owner and stated that he was "responsible for renting and maintaining [the] property." *Id.* at 9.

Hill filed an answer, affirmative defenses, and a motion to dismiss on the basis that Brewer's 20-day notice was deficient because he was not the owner or lessor of the premises as required under RCW 59.18.650(2)(i). In response, Brewer filed a supplemental declaration, stating:

> I am property manager for the owner of the property [at issue]. I am also a lessor and I occupy the property where Ms. Hill resides. We share common areas like a kitchen and laundry. I am responsible for renting and maintaining this property on behalf of the owner and I am legally authorized to file this complaint.

---

[2] This was codified at RCW 59.18.650(2)(i). *See* LAWS OF 2021, ch. 212, § 2. This statute provides that a landlord has cause to evict a tenant or terminate the tenancy when:

> The tenant continues in possession after an owner or lessor, with whom the tenant shares the dwelling unit or access to a common kitchen or bathroom area, has served at least 20 days' advance written notice to vacate prior to the end of the rental term or, if a periodic tenancy, the end of the rental period.

RCW 59.18.650(2)(i).

[3] *See* RCW 59.18.370, .380.

3

No. 56541-2-II

*Id.* at 26.

B. Show Cause Hearings and Subsequent Orders

The trial court held a show cause hearing on October 22, 2021. Brewer argued that the definition of "landlord" under the RLTA included an owner, lessor, or sublessor, including an owner, lessor, or sublessor's agent, residential manager, or property manager. Brewer argued that, as a property manager, he was authorized to serve Hill with the notice. Hill argued that a property manager is not equivalent to a lessor with authority to evict under RCW 59.18.650(2)(i).[4] The trial court continued the hearing for one week for the parties to file additional evidence for the court to consider. The following exchange then occurred:

> THE COURT: -- I don't want to set it for a trial yet. I – but there, there's, an iss – a genuine issue about whether or not Mr. Brewer qualifies as a person under that section. And I'm not being presented with adequate information at this point to make that call.
>
> [BREWER'S COUNSEL:] So what do – would you like him [to] present, Judge, to offer testimony about what his role is?
>
> THE COURT: Uh, perhaps that's what we'll need. And we, um – I don't perceive a lessor as being simply an agent of the owner that goes out and gets a tenant to sign a written lease agreement. That doesn't make somebody the lessor. It makes him – he's an agent of the owner. Um, a lessor – to be a lessor, I think you'd have to, you'd probably have to be leasing the property from the owner, and then turning around and leasing it to a – to these roommates. Um –
>
> [BREWER'S COUNSEL:] – That's helpful, and now I know what the Court is thinking. Thank you.
>
> THE COURT: -- [inaudible]. Well, yeah, I mean, I, I – that's, that's how I'm thinking on, on it is that the lessor has to have some kind of interest in the property by which he can allow a lessee or a tenant to live there. Well, a lessor – an owner can be a lessor because an owner can sit there and lease out all these rooms.

---

[4] Tellingly, counsel for Brewer then looked up the definition for "lessor" under *Black's*, stating: " 'he who grants the lease,' essentially, the property manager." Verbatim Rep. of Proc. (Oct. 22, 2021) at 8.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56541-2-II

> If, if Mr. Brewer, sublet, sublet that entire building, just for an example, if he's, if he leased that entire building, and then turned around and chose to operate it as – like it's being operated, apparently, and that is, renting out rooms to various people and him living there too and sharing a toilet and kitchen, or whatever, then, then, I'm thinking he would qual-, qualify as a lessor under 650(i). But just, just being an agent that gets a tenant to sign the owner's lease, I don't think that makes that, that agent a, a lessor. And a lessor is, is listed separately under the definition of landlord, and it's listed separately from agent, and it's listed separately from a sublessor or an owner. So that's the problem is whether or not 650(i) can even be applied to this. And I'm not in a position to decide it either way today.

Verbatim Rep. of Proc. (VRP) (Oct. 22, 2021) at 12-14.

> After the hearing, Brewer filed a second supplemental declaration, stating:

> I am the lessor for the property [at issue]. I have attached my lease as an exhibit to show the Court that I am responsible for the entire rent of the house. If any of the tenants do not pay their rent for the month then I still have to pay the total to the owner and I am responsible for the entirety of the utility bills. This is the agreement that I have with the owner who resides overseas. There are 4 adults including me and the tenants pay $650 $450 $550 and $550.

CP at 31.

Brewer's lease provided that Brewer "rents from [Lindquist], for use as a residence, those certain premises located at 305 PIERCE ST (2+ BDRMS)" in Port Townsend on a month-to-month basis for a monthly rent of $1,550. *Id.* at 33. Brewer was also responsible for payment of water, sewage, and garbage. The agreement provided that the premises shall be occupied by no more than four adults, but it does not name the adults approved to live at the premises. Under the "No Assignment" provision, Brewer was prohibited from subletting the premises or any part of the premises without Lindquist's written consent. *Id.* In addition, Brewer was responsible to maintain shrubbery at the property. The agreement listed the "manager" as Rachel Sondie. *Id.* at 34. Hill did not provide any supplemental information for the court.

5

No. 56541-2-II

The trial court held a second show cause hearing on October 29, 2021. Brewer argued that, because he collected rent from the other occupants "under his lease, and then [ ] he is responsible for any shortfalls to the owner," he had a pecuniary interest and was responsible for maintaining the property, renting, and evicting tenants. VRP (Oct. 29, 2021) at 3. Hill argued that Brewer's lease only established that he was a tenant, did not give him authority to sublet or otherwise rent out any rooms in the home, and that it listed another individual as the manager of the property.

The trial court determined that Brewer was a lessor, explaining:

> [W]hen I looked at this lease, I said to myself, 'this answers the question.' Um, as far as I'm concerned, at this point in time, this, this lease was done back in 2018. 2018, three years ago. Brewer says under oath he's been the manager. Brewer says under oath he leases the entire building. He says under oath that he pays a total rent to Lindquist and then he turns around and collects rent from three or four subtenants, um, of him. But he's a lessor because he's, he's leasing the place from Lindquist, then he's turning around and basically running the building like I just exactly described. That makes him a lessor.

*Id.* at 8-9. The court further stated that Hill filed nothing contradictory "to create an issue of fact." *Id.* at 9. The court issued a writ of restitution to Brewer.

Hill moved for reconsideration, arguing that it was error for the trial court to issue the writ because Brewer failed to demonstrate that he was a lessor. Hill also moved to stay enforcement of the writ. The trial court ordered another show cause hearing on Hill's motion for reconsideration and stayed enforcement of the writ pending the hearing. On the morning of the third show cause hearing, Brewer filed a declaration from Lindquist that stated:

> I am the owner of the property [at issue]. On 09/11/2018 I contracted with Mark Brewer to become the lessor of my property. He is responsible to me for paying the entirety of the rent of the house, the upkeep, the leasing, and all other matter connected to the daily operation of this property. I reside in Thailand so having one person responsible to pay the rent was an ideal scenario for me.

CP at 61.

6

No. 56541-2-II

At the show cause hearing on November 22, 2021, Hill argued that Lindquist's declaration was untimely under the local rules. The trial court indicated that it could continue the hearing, but would not consider excluding the declaration because "it confirms everything the Court already found." VRP (Nov. 22, 2021) at 3. Hill argued that the declaration merely stated in conclusory fashion that Brewer was a lessor but was just attempting to "speak it into existence." *Id.* at 4. The court responded, "he's the owner of the property. It says what relationship he has with Mr. Brewer. I mean, I don't know, I don't know what other evidence you want." *Id.* Hill pointed out that, at that stage, the court had only issued a writ, had not made a final determination on the action, and argued that the issue of whether Brewer was a lessor should go to a jury. Explaining its prior decision, the court stated:

> I found there were not any issues of material fact and that . . . Mr. Brewer was a lessor under that sub-section that they're proceeding under and that they were entitled to a writ of restitution. It's that simple. The declaration that was filed here from Mr. Lindquist, in the Court's mind, just simply confirms that. And the defense has not filed anything to contradict those facts. . . . there were no issues of fact when [we] were here last time when I issued – authorized issuance of the writ. There are no issues of material fact today.

*Id.* at 14-15. The court denied stay of the writ and clarified that it would not be setting the matter for trial.

On December 10, 2021, the trial court entered an order on Hill's motion for reconsideration, finding that Hill was guilty of unlawful detainer, that her tenancy was terminated, and that there would be no trial on the complaint and answer. In addition, the court entered an order on show cause, granting a writ of restitution to Brewer. Hill sought and obtained a stay of the writ pending this appeal.

7

No. 56541-2-II

## DISCUSSION

### I. LEGAL PRINCIPLES

Hill argues that the trial court erred by finding that Brewer was a lessor and issuing a writ of restitution or, alternatively, by failing to set the case for trial when there were material issues of fact as to whether Brewer was a lessor. Brewer argues that he established he was a lessor because he rented the entire property and was responsible for the entire rent to the property owner.[5] We hold that the trial court erred by issuing a writ of restitution, finding Hill in unlawful detainer, and terminating her tenancy.

### A. UNLAWFUL DETAINER ACTIONS

Disputes involving residential leases are governed by the RLTA. *Tedford v. Guy*, 13 Wn. App. 2d 1, 10, 462 P.3d 869 (2020). At or after the filing of a complaint for unlawful detainer, the plaintiff may request an order for the defendant to show cause why the court should not issue a writ of restitution. RCW 59.18.370. "Show cause hearings are summary proceedings to determine the issue of possession pending a lawsuit," not a final determination of the action. *Carlstrom v. Hanline*, 98 Wn. App. 780, 788, 990 P.2d 986 (2000).

At the hearing, the court is to determine the merits of the complaint and answer. RCW 59.18.380. The plaintiff bears the burden of proving the right of possession by a preponderance of

---

[5] We also acknowledge that Brewer argues that Lindquist assigned his possessory right and interest in the property to Brewer, making Brewer a lessor. However, Brewer did not make this argument at the trial court. By raising this argument for the first time on appeal, Brewer deprived Hill of the opportunity to develop facts to counter the argument, and it would be unfair to consider this alternative basis to affirm the trial court's decision. Accordingly, we decline to consider Brewer's argument that the rental agreement between Lindquist and Brewer was an assignment. *See* RAP 2.5(a) ("A party may present a ground for affirming a trial court decision which was not presented to the trial court *if the record has been sufficiently developed to fairly consider the ground*.") (emphasis added).

No. 56541-2-II

the evidence. *Hous. Auth. v. Pleasant*, 126 Wn. App. 382, 392, 109 P.3d 422 (2005). If it appears that the plaintiff has the right to be restored possession of the property, the court enters a writ of restitution. RCW 59.18.380. "Whether or not the court issues a writ of restitution at the show cause hearing, if material factual issues exist, the court is required to enter an order directing the parties to proceed to trial on the complaint and answer." *Randy Reynolds & Assocs. v. Harmon*, 193 Wn.2d 143, 157, 437 P.3d 677 (2019); RCW 59.18.380. If there are no issues of material fact regarding possession or any defenses raised by the defendant, the court need not set the matter for trial. *Tedford*, 13 Wn. App. 2d at 16-17.

B. PRINCIPLES OF STATUTORY INTERPRETATION

In this case, the question of whether Brewer had the authority to evict Hill turns on the proper interpretation of the term "lessor" in RCW 59.18.650(2)(i). Statutory interpretation is an issue of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our goal is to "ascertain and carry out the Legislature's intent." *Id*. If the meaning of the statute is plain on its face, we "must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10. We discern plain meaning "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). An undefined statutory term is given its ordinary meaning, and we may look to a dictionary for the word's meanings. *Id*.

If a statute is susceptible to more than one reasonable interpretation after reviewing the plain meaning, it is ambiguous. *Id*. "[B]ut 'a statute is not ambiguous merely because different interpretations are conceivable.' " *Id.* (internal quotation marks omitted) (quoting *Est. of*

9

No. 56541-2-II

*Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009)). For ambiguous statutes, we may look to legislative history and relevant case law to discern legislative intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014).

## II. ANALYSIS

Hill argues that the trial court erred by finding that Brewer was a lessor because Brewer merely showed that he is responsible for collecting rent for Lindquist. Brewer argues that his responsibility to pay rent for the entire property established that he was a lessor.

RCW 59.18.650 was enacted by the legislature in 2021. *See* LAWS OF 2021, c. 212, § 2.[6] Under the statute, generally, landlords are not permitted to evict a tenant, refuse to continue a tenancy, or end a periodic tenancy without cause. RCW 59.18.650(1)(b). The statute provides a list of situations in which the landlord would have cause to evict a tenant, including:

> The tenant continues in possession after an owner or lessor, with whom the tenant shares the dwelling unit or access to a common kitchen or bathroom area, has served at least 20 days' advance written notice to vacate prior to the end of the rental term or, if a periodic tenancy, the end of the rental period.

RCW 59.18.650(2)(i).

The statute providing definitions for the RLTA was amended in the same act, but the term "lessor" remains undefined. *See* RCW 59.18.030; LAWS OF 2021, ch. 212, § 2. The RLTA's only definition containing the term "lessor" is within the definition of "landlord:"

> "Landlord" means the owner, lessor, or sublessor of the dwelling unit or the property of which it is a part, and in addition means any person designated as representative of the owner, lessor, or sublessor including, but not limited to, an agent, a resident manager, or a designated property manager.

---

[6] It is worth noting that the purpose of enacting RCW 59.18.650 was to "protect[ ] residential tenants . . . by . . . limiting the reasons for eviction, refusal to continue, and termination." *See* LAWS OF 2021, ch. 212, § 2.

No. 56541-2-II

RCW 59.18.030(16). Notably, RCW 59.18.650(2)(i) only authorizes evictions by the "owner or lessor," not the broader category of landlord or any of the subcategories, such as a property manager as a representative of the owner or lessor. In addition, the RLTA is "strictly construed in favor of the tenant." *Randy Reynolds*, 193 Wn.2d at 156.

Because the term "lessor" is not defined, we may look to a dictionary to determine the plain meaning of the word. *Gonzalez*, 168 Wn.2d at 263. *Black's* defines a "lessor" as "[s]omeone who conveys real or personal property by lease." BLACK'S LAW DICTIONARY 1086 (11th ed. 2019). Similarly, the term is defined in *Webster's Dictionary* as "one that surrenders possession of real estate under a lease (as a written lease): a grantor of a leasehold estate." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1297 (2002). It is clear from these definitions that a lessor must have the authority to grant a lease.[7]

Prior to the court's decision to continue the first show cause hearing, Brewer unequivocally represented himself as the property manager of the premises. Only after Hill filed her answer did Brewer assert, "I am also a lessor." CP at 26. And at the first show cause hearing, he attempted to argue that this was sufficient to establish that he had authority to initiate the action under RCW 59.18.650. The trial court thought that there was "a genuine issue" regarding whether Brewer was a lessor, but continued the hearing rather than setting the matter for trial. VRP (Oct. 22, 2021) at 12.

---

[7] Hill points us to the *Black's* definition for lessor, while Brewer encourages us to use a "common-sense definition" found in an Illinois case: "those persons who receive and control the rents and profits from the property." Amd. Br. of Resp't at 21 (quoting *Munroe v. Brower Realty & Mgmt. Co.*, 206 Ill. App. 3d 699, 706, 565 N.E.2d 32 (Ill. App. Ct. 1990)). Following Washington's principles of statutory interpretation to determine the plain meaning of the statute, we decline to adopt Brewer's proposed definition for "lessor."

11

No. 56541-2-II

Brewer then filed a second supplemental declaration, attaching his lease "to show the Court that I am responsible for the entire rent of the house." CP at 31. Although Brewer declared that he was required to pay the total rent to the owner if other tenants failed to pay him, the amounts provided in his documentation are unclear about this. He listed the rents paid by the tenants as $650, $450, $550, and $550, which totals $2,200. But the rent listed in the lease is $1,550. Moreover, there is nothing in the lease between Lindquist and Brewer that says Brewer is responsible for collecting rent from other tenants. The lease agreement, as written, merely says that Brewer owes Lindquist $1,550 in rent per month.

In addition, Brewer's lease explicitly prohibits Brewer from subletting the premises or any part of the premises without Lindquist's written consent. Therefore, although Brewer provided the conclusory assertion that he was a lessor in his declarations for the court, the record does not show that he actually has the authority to grant a lease.[8] Yet, after the second show cause hearing, the trial court concluded that Brewer was a lessor because "he pays a total rent to Lindquist and then he turns around and collects rent from three or four subtenants . . . he's a lessor because he's [ ] leasing the place from Lindquist, then he's turning around and basically running the building like I just exactly described." VRP (Oct. 29, 2021) at 8-9. The court found that there were no longer any genuine issues of fact after reviewing Brewer's declaration and lease, and the court's corrected

[8] Similarly, Lindquist's declaration filed in response to Hill's motion for reconsideration states that he "contracted with Mark Brewer to become the lessor" of the property. CP at 61. Lindquist states that Brewer is responsible "for paying the entirety of the rent of the house, the upkeep, the leasing, and all other matter connected to the daily operation of this property." *Id*. Lindquist does not describe what it means for Brewer to be responsible for "the leasing," and he does not state that Brewer has the authority to grant a lease. *Id*. Rather, it appears as though he entered into the written agreement with Brewer simply because it was "an ideal scenario" to have one person making rent payments to Lindquist. *Id*.

12

No. 56541-2-II

orders following Hill's motion for reconsideration state that Hill's tenancy is terminated with no trial on the complaint and answer.

We hold that it was error for the trial court to issue a writ of restitution and order that Hill was in unlawful detainer and that her tenancy should be terminated on this record because there is no evidence that Brewer has authority to grant a lease. The statute on which Brewer relies requires him to be either an owner or lessor, and because the evidence Brewer submitted did not prove that he was a lessor, the notice he provided to Hill terminating her tenancy was defective. *See* RCW 59.18.650(2)(i). Brewer, therefore, "could not obtain relief under the unlawful detainer statute," and the unlawful detainer action must be dismissed. *See FPA Crescent Assocs. v. Jamie's LLC*, 190 Wn. App. 666, 678-79, 360 P.3d 934 (2015).

Furthermore, as Hill points out, even if Brewer meets the definition of a "lessor" under RCW 59.18.650(2)(i), there is no evidence that he is *Hill's* lessor. It is undisputed in the record that Hill became a tenant in Lindquist's home before Brewer did. Her rental agreement, therefore, was not with Brewer. The trial court was unmoved by this fact, taking the position that Lindquist and Brewer could unilaterally change the terms of Hill's lease, making Brewer Hill's lessor rather than Lindquist, without executing a new lease agreement with Hill or *even notifying* her of this new lease agreement. To the extent that Brewer would point to his collection of rent from the tenants that he then sent off to Lindquist as evidence that Hill should have known that Brewer had become her lessor, this fact just as easily leads to an inference that Brewer was merely doing a favor for all involved and saving his roommates the expense of postage by mailing off one check to the landlord rather than each of them having to mail off separate checks. The RLTA is "strictly construed in favor of the tenant," and we are not persuaded that Brewer can unilaterally declare

13

No. 56541-2-II

himself Hill's lessor without Hill having agreed to this arrangement. *Randy Reynolds*, 193 Wn.2d at 156.

Accordingly, we hold that the trial court erred in not dismissing the unlawful detainer action and reverse the trial court's order entered on December 10, 2021 granting Brewer a writ of restitution, finding Hill in unlawful detainer, and terminating Hill's tenancy. We therefore dismiss Brewer's unlawful detainer action against Hill.[9]

ATTORNEY FEES

Both parties request reasonable attorney fees on appeal. Hill requests fees and costs under RAP 18.1, RCW 59.18.290, and RCW 59.18.650(4), and Brewer requests attorney fees under RAP 18.1, RCW 59.18.290, and RCW 59.18.410.

RAP 18.1(a) allows a party to request attorney fees if "applicable law" provides the right to recover the fees. Under RCW 59.18.290(2), the prevailing party in an unlawful detainer action may recover reasonable attorney fees. Because we reverse the trial court's order and hold that Brewer did not establish that he had authority to evict Hill under RCW 59.18.650(2)(i), Hill is the prevailing party in this appeal. We award attorney fees to Hill in an amount to be determined by the court commissioner.

CONCLUSION

We hold that the trial court erred by finding that Brewer was a lessor with the authority to issue a 20-day termination notice under RCW 59.18.650(2)(i). Accordingly, we reverse the trial

---

[9] Because we reverse on the basis that Brewer is not a lessor, we need not consider whether the trial court's decision to consider Lindquist's declaration at the hearing on Hill's motion to reconsider was an abuse of discretion.

No. 56541-2-II

court's December 10, 2021 order orders on motion for reconsideration and on show cause and

dismiss the unlawful detainer action.

_____
CRUSER, J.

We concur:

_____
LEE, J.

_____
GLASGOW, C.J.